Good morning, your honors. May it please the court. My name is Alan Agabagian, and I'm here on behalf of the petitioners Carmen Margosyan and Sire Anoush Garagosyan. I'd like to reserve two minutes of my time, if possible, for rebuttal, and I'll try to keep an eye on the clock. This case, your honors, involves an asylum claim, and the issues before this court are an adverse credibility finding by the immigration judge and also his finding that there was no nexus between the persecution and one of the five intermediary factors. Now, I just want to briefly address the adverse credibility finding, which we submit was not supported by substantial evidence, and then briefly move on to the also erroneous nexus analysis. So, in other words, you're going to attack both the credibility finding and the alternative finding. Correct, your honors. Yes. Now, this case is governed by the Real ID Act, which mandates that credibility findings be based upon a totality of the circumstances and consideration of all relevant factors. This court has consistently held that, under the standard, an immigration judge cannot cherry pick facts which support that finding and ignore all the other evidence which would undermine that finding. And yet this is exactly what the immigration judge did in this case, cherry picked. Well, but just a minute. I don't know whether you can read. I realize those are good lawyer terms about cherry pick. But when we get to the facts here, what your client did is she knowingly submitted a false affidavit in support of the asylum claim, right? Well, and I want to address that, Judge, because when you actually read the transcript, which I'm sure you have, that's not really the case here. But just a minute. It seemed to me that that's what she said, that she admitted it was false, that she admitted she saw the document before submitting it, and she knew they were false statements at that time. That's what it seems to me she said. If I may refer your attention to the administrative record on page 328, 14 to 15, which the petitioner actually said that the affidavit was not false and also that she had nothing to lie about. And this is on 329, 11 to 15. But she also said it was false. Well, what she said, Your Honors, because I was in court and the judge really went at her when the fact came out that, in fact, the male neighbors had not observed the bruises. But I think one thing that's really important to note, Your Honors, is- I'll put another question to you. Can there be substantial evidence to support a judge's decision, and yet not sufficient evidence on the totality of circumstances? One could say that the false- the tendering of a false affidavit, knowing it's false, is substantial evidence to support the adverse credibility finding. But perhaps one can also argue that other factors in the record were not adequately taken into consideration. That's correct, Your Honor, and that's exactly what happened in this case. Well, let's tell us about those. Please, if I may, Judge. And, again, if I could, if time permits, I also want to quickly address this false document. Well, when you do, I appreciate my good colleague's question, because I think that looks at the standard of review. And I hope when you're trying to explain to him how it makes the totality of the circumstances, that we look at the standard of review, because he's really saying, if there's substantial evidence to sustain what the judge did, is there a higher standard under the totality of the circumstances which would say we could go some other place? Right. Thank you. That seems to me what he's saying. Exactly right. And that's why I look for a case to even do that. And so when you're doing it, I don't think that explaining the facts is really going to do it. Give me some precedent that says I can get there. Okay, Judge. And I'll do it. For example, this Court held in Jermaine-Berhe, where the immigration judge's adverse credibility finding hinged on a single fraudulent document, is not supported by substantial evidence, in light of the Petitioner's otherwise consistent testimony and other documentary evidence. But there the proof was that she didn't know the document was false. Yes, she knew it was false. That's correct, Your Honor. But again you're going to have to admit the falsity and get on to other circumstances. The immigration judge in this case completely ignored the Petitioner's consistent testimony, which he himself found to be credible and consistent. But the problem comes, and I know you want to go there, but my colleague and I are trying to get you to go to the issue we think will help you because we're not sure where you're going. The problem comes in that the affidavit didn't agree with her testimony. She never suggested it had any false information until she was confronted. She submitted it. She put it in the record. It didn't agree with what she was saying. And then she was confronted about it. And at that point, that's when we find out she knew it wasn't exactly the way it ought to be. I'll give you that, even that much. She'd seen the document before and she knew it was false. So that's why it seems to me you've got to have a higher standard, legal standard even, because if I look at Akin Maid versus INS, there's one where there's a basis for the credibility determination and absolutely could be used under the totality of the circumstances. If you look at, and I'm from Idaho, so I don't even know how to say this, Yai Main Bear versus Ashcroft, 2004 case, the same kind of thing came up. That's why I think Judge Hellerstein's question is most important. Can I go around this? Well, you can, Judge, again, because there was, unlike the other cases, Your Honors, in this case there was other documentary evidence which supported the petitioner's claim. For example, Your Honors, the petitioner submitted two records. There was a medical record which confirmed her rape, her brutal rape, and also the bruising on her body. And there was also a court record calling for her arrest based on false allegations that she had assaulted the police or slandered them. Now, what's also very important, Your Honors, is that the immigration judge at the outset specifically said that these two documents are the most significant documents, and yet he failed to give any consideration to these documents in his decision. What was the circumstance? I know there was some kind of a challenge to the authenticity of those that the judge said he or she was going to set aside. Sure. What was the circumstances around that? Around what, Your Honor? I thought there was some report that came in. There was, Your Honor. There was an anti-fraud report, basically, that was submitted by the embassy. And after extensive arguments as to the actual accuracy of this report, the immigration judge, over my objection, admitted the report into the record but gave it zero weight because of the fact that he didn't find it to be reliable because of all the inconsistencies in the report. And the BIA also, in their holding, basically affirming the IJ's finding, gave zero weight to that report. So, therefore, that report in no way undermines the validity of these two documents. And the immigration judge asked the petitioner to authenticate these documents. She explained how she got these documents, how she obtained them, who obtained them for her. And there was nothing there that basically, in the testimony, that undermined the validity of these documents. And the immigration judge failed to examine these documents, at least in his credibility determination, to say that other than this embassy report, do these documents have any weight? There's nothing in the evidence that would, other, again, than this embassy report which the judge nor the BIA gave any weight to. There's nothing in the evidence to say that these reports were not reliable, Your Honors. Did he make an adverse finding of credibility regarding her being raped twice, at least twice? Well, he did not, Your Honor. And did he make an adverse credibility determination that she was being hounded by the police authorities because they want to give up her husband? He did not, Your Honor. Would you say that might have been part of the totality of circumstances? It absolutely would have been. That were not heeded by the immigration judge? Correct, Your Honor. He specifically, Your Honor, said that her testimony was consistent, internally consistent, and consistent with her written affidavit. So he did not. On the bottom of page 25 of his decision, going on to 26, he makes the adverse credibility determination regarding the declaration of the ten men. Correct. And he says he's considered the extent to which the respondent's testimony is otherwise consistent with her written statement and the extent to which she was internally consistent in her own testimony. Still, the court finds the inconsistencies presented here between the respondent's testimony and the false document that she knowingly provided to be striking. Inconsistencies were not manifestly trivial. Might one say that this IJ was focused only on the false statement? It did not pay attention to the fact of her being raped with no rebuttal evidence to say that she wasn't? Absolutely, Your Honors. But let's go the other way. Is there any law or any precedent? Because thinking about this, I've tried to think what we were really saying. Is there any precedent in our case law that says the IJ has to say what part of her testimony is incredible? It's my understanding that our case law would suggest if the IJ finds there's any inconsistency in the testimony, then the IJ can find that her testimony is incredible and need not decide what part of it's credible or it isn't. It's all incredible based on the one inconsistency. That's the case law, isn't it? I mean, it isn't a matter of the IJ has to go through and say, well, you're inconsistent about this allegation but consistent about this, or you're consistent about that allegation but inconsistent about this. What the IJ has to find, is there any basis for the incredibility determination? And one instance can make that. And then the whole of her testimony is considered incredible, as I understand the case law. Well, that's... I mean, do you want to correct me? Is there some case where I'm wrong about that? Well, you're correct. But, again, the case law is also clear that the IJ has to rely on the totality of the circumstances. And as Judge Hellerson stated... Well, that's why I said give me a case where the IJ found an incredible, made an incredible determination and yet said on the totality of the circumstances, we're going to find you credible. Would the IJ say that, Your Honors? Yeah. Give me a case. I don't think there is a case. I don't think there is a case. That's why I'm not sure. I think the closest is dictum and sheriff. That's what I'd say. And so, therefore, it seems to me that I really can't find, if there's an incredibility determination, that there can be under the totality of the circumstances a credible witness. So I ask you, Mr. Aghabagian, is there a case that prevents us from reversing the IJ and BIA because the IJ did not look at all the circumstances, did not ask was she really raped, was she really hounded because of her husband's political affiliation? I don't know of a case that would prevent you guys, Your Honors, from doing so. It's just that the cases suggest we shouldn't do so without compelling us. Right. Don't agree so easily. Your Honors, if I may, this is also, and I know you don't want to go into this argument, but if I may refer your attentions to the IJ's basis for finding that this document was false. The administrative record on page 88. You're going to lose that point. I wouldn't bother. I'm sorry? You're going to lose that point. I wouldn't bother. Okay. You're talking about the actual affidavit in which the neighbors attested. Right, right. And again, you know, it's the. . . Ten men did not witness the rape. Ten men did not see her bruises. But that's the exact point, Your Honors. There's not ten men. There are three women on this affidavit. And the judge says in his decision that the petitioner admitted that the ten declarants did not see the bruises. To the contrary, Your Honors, the petitioner stated that two of the female neighbors who are also on this affidavit did see her bruises and explained that perhaps they told the men on this affidavit that she was raped and had bruises and therefore their name was included in the affidavit. So the judge is misinterpreting the petitioner's testimony. The judge himself acknowledges that not all these ten clients are men. There were three women on this affidavit. And consistent with the petitioner's testimony, two of these neighbors did see her bruises. So the judge is saying that none of these people on this declaration saw a bruise, and yet they say they saw bruises, is a mischaracterization of the evidence. And because the judge relied solely, solely on this affidavit, which, again, he mischaracterizes, and then completely ignored, again, credible and consistent testimony of the petitioner, which he himself, again, found to be consistent, and two other documents, which he himself found to be the most significant documents, which, again, confirm the fact that she was barbarically raped, that she had bruising, that does not meet the totality of circumstances standard, Your Honors. No, his time is gone. Okay. All right. We'll give you a couple minutes for a round. Thank you. Let's hear from counsel for the Attorney General. Good morning, Your Honors. May it please the Court. Remy Darucha-Fodoo representing the United States Attorney General. The petition should be denied because substantial evidence supports the agency's finding that petitioner was not credible, and the record does not compel a contrary conclusion. As you've rightly pointed out, Your Honors, the standard of review here supports affirming the agency's adverse credibility finding. Even in cases where it is a close case and a reasonable fact finder could go either way, the fact finder's finding should be affirmed because if the evidence can go either way, it is not compelling. And that is what is missing here, Your Honor. The evidence is just not compelling. You think it's compelling that she was raped? Well, Your Honor, that is not clear from the record, given the inconsistencies. I'm asking you, do you think she was raped? I don't know, Your Honor. Do you think a woman would say, I've been raped two times if she wasn't raped? Particularly in Armenian society? I don't know, Your Honor. I'm not privy to those facts. You think that she was hounded by the police because her husband had run away and the police wanted her to give up her husband? Under the totality of the circumstances in this case, Your Honor, the true facts are not known because of the adverse credibility finding by the agency. In other words, the issue was not reached by the I.J.? Well, the immigration judge actually looked at the totality of the circumstances. The immigration judge stated on the record. How can you say you don't know if she was raped or not? Well, the immigration judge stated on the record that there was no cherry-picking going on. There was no what? There was no cherry-picking of the facts going on, Your Honor, and that looking at the totality of the circumstances. In fact, if I may read to you on page 90 of the administrative record, it says, What's the page of his decision? Page 90. 19. Of the administrative record, which is page 25 of the judge's decision. That's the one I read into the record. Yes, precisely, Your Honor. Again, to reiterate that the judge was not cherry-picking and looked at the totality of the circumstances. That's what he said. Counsel did state, Your Honor, that, you know, the immigration judge didn't look at the totality of the circumstances, but it is on the record that Petitioner stated that the document contained false information. Do you agree that because of the false information that she tendered, the immigration judge did not make a finding as to whether or not she was raped? Well, the immigration judge may not have stated explicitly that she was raped, but the immigration judge is not required to write an exegesis on every contention. It's a pretty important piece of evidence in the case. Well, it is important, Your Honor, but the information that Petitioner presented also was very, very crucial in determining whether these events really happened. Do you think if she went back, she'd be raped again? I don't know that, Your Honor. Hounded again? I don't know. Killed? I don't know that, Your Honor, but what I do know, Your Honor, is that an applicant with a legitimate claim usually does not find it necessary to invent or fabricate documents in order to establish asylum eligibility. And that appears to be what was done in this case. Petitioner knowingly submitted a document containing untrue information to bolster her claim. And under the standard of review here and the evidentiary standards of the REAL-ID Act, one document alone, as the judge has said, contains the entire record. What case, what's the best case for that proposition, that a single document as opposed to a single portion of a person's testimony? I didn't find any of the cases you cited to stand for the proposition. You just did. Well, we filed a 28-J letter, Your Honor, last week or earlier this week, actually, to the Petitioner's Testimony Risk V-Holder, which affirmed an adverse credibility finding where most significantly the Petitioner's Testimony contradicted the key piece of documentary evidence they had submitted. Yeah, but there's always, in all the cases that I reviewed that, I don't know if you wrote the brief or someone else, but there was always, yes, the person had submitted, let's say, a false document, but there was always, there were always other circumstances combined with that that we said supported the adverse credibility determination. I couldn't find any case that said if your testimony, given all the other circumstances, seems credible, but you submitted a single piece of paper that had a falsehood on it, that could support saying that none of your testimony is true. Well, under the evidentiary standards of the REAL-ID Act, Your Honor, even if one issue, one document, taints the record, it completely undermines and diminishes the reliability of other evidence in the record. Well, no, I'm asking, is there a case that says exactly that? Yes, Your Honor, and that's Risk V-Holder is one of those cases where that affirmed that an adverse credibility finding, you know, contradicted the key piece of documentary evidence that the Petitioner had submitted. The Court ruled there that, you know, definitely the adverse credibility finding could hold in that matter. And so in this case, Your Honor ---- Mr. Begian said that you could look at the affidavit of the ten people as eyewitness evidence given by the women and acceptance of that and hearsay statements given by the men. He didn't say it in those words that some might gloss on what he said. In that case, the affidavit doesn't necessarily have to be true. It's incompetent testimony, but it doesn't necessarily have to be false. Well, Petitioner herself admitted that the document was false. And so picking up parts of it ---- The policeman's document said regularly and often visited the apartment. That's different from what you've told us here in court. And then she tries to get away from the document. She says her sisters told her that the neighbors were trying to help her in every way. And she recognized that mainly male neighbors, and she says yes. And do you know why these men said that the police regularly and often visited the apartment? If your husband left, what you said, they only came twice. And so we're making an adverse credibility finding on the basis that it was frequent rather than twice, and on the basis that it was hearsay rather than untrue. Yes, Your Honor. So is that a permissible way of looking at this? Well, Your Honor, again, looking at the standard of review, if it could go either way, and that is the crucial and very important issue here. So that trumps what I say. Yes. If it could go either way, Your Honor, it is not compelling evidence. And it has to be compelling evidence. That is the standard, and that is missing here. The fact that Petitioner's Counsel makes these post hoc rationalizations about parsing the evidence and saying, oh, some part of it is true and some part of it is untrue, really does not address the core issue here, which is that it fails to meet the compelling evidence standard. Now, if I may, Your Honor, there's a second part to this case, which is the merits of the case. We do believe that the petition should be denied based on this independently dispositive adverse credibility finding. But if the Court should, you know, reach the merits of this case, it should likewise deny the petition on that, on the basis of the merits of the case. You're saying even if we accept her testimony as true, you think the no nexus finding is still supportive? The nexus finding, the immigration judge's agency's nexus finding is also correct. I thought the two were intertwined. Are they really independent? Well, the first, the adverse credibility issue really is a threshold issue. Once there is an adverse credibility finding, you cannot even, you know, really move forward to the merits of the case if that disposes of it. You know, I tell my juries that if there is false testimony, they're free to reject it entirely, or they're free to take that part which they think is true and reject that part which they think is false, which is a one-plate instruction in the Southern District of New York, and I'm sure here as well. Why is it not the same as the totality of circumstances? Well, the Federal Rules of Evidence operate a little bit differently in immigration courts, Your Honor, and under the Real ID Act, even if one document or one statement is untrue, the whole document, the judge is sitting far away and cannot determine the veracity of a claim, and that one apple spoils the entire cart. So, Your Honor. So if we move, then, to the second prong or the alternative prong, it seems interesting that what was found was that it was unreasonable that she was targeted because of her political view. Now, I appreciate that the evidence is that her husband held the political view, that she was only the way to find her husband, I guess, but it seems to me that the police would not have even tried to find or tried to question her, would not have put her in harm's way if it weren't that she was protecting the anti-government conspiracy, if you will, or the anti-government person who was being there, and yet what happened here is that they parsed it. They said, well, it may have been that your husband was Freedom Voice Party, or it may have been that your husband was anti-government, but the only thing they wanted out of you is to know where he was so they can do whatever they want to hurt you. That seems a little tough to me. I mean, if I'm really looking at this, there's only one reason this poor woman was involved. Her husband was anti-government. Now, we can't say she's anti-government because her husband was, because there's no evidence of that, but we can infer that's what the police were suggesting, can't we? No, Your Honour, the police did not suggest that. They actually told her that if she produced her that speaks to the issue of whether she was being attacked because of some familial tie or some kinship tie. All they wanted was to know where her husband was, and this case is very similar to Garcia-Millan. So if you give up your husband and allow us to torture and kill her, you can be alone. We won't rape you anymore. We won't hound you anymore. Is that your argument? Well, the policeman told her. It is not even clear from the record, Your Honour, that they were raping her because of her association with her husband. Were they busting into her house and tying her up? Raping her several times in a shot. That was tangential to the issue that they came to address, which was looking for her husband. And this Court has ruled in Garcia-Millan, which is a very, very similar case with similar facts, and totally refutes Petitioner's argument that she was raped because of the familial relationship she had with her husband. If you could look at it this way, Your Honour, it could have been her husband's chauffeur or driver who knew the whereabouts. There is no familial relationship there. It was just basically that they were seeking him and anyone who knew his whereabouts, and she just happened to be the available person and to be his wife. What case is that? Garcia-Millan, which we filed a 28-J letter on Monday. I'll give you the correct site, Your Honour. In your brief? It is not in the brief, Your Honour. We filed a 28-J letter. It is 755 F3D, 1026. 755 F3? Correct. What page? 1026, page 1032-33. Let me ask you a different question. Yes, Your Honour. If we were to disagree as to the credibility finding, wouldn't we have to assume that she was credible? Well, under FARA v. Ashcroft, Your Honour, this Court has ruled that if or you said if you assumed that she was credible? Correct. Well, I believe the agency The agency also looked at the merits of the credibility finding. If you look at the Board's decision, Your Honour, it states there that based on the entirety of the record, she had not established that she would be tortured by or with the instigation or acquiescence of the government. But they were suggesting, I mean, everybody has suggested all the way through that she was not credible. And so therefore, even reading their record, it didn't seem to me that I could really say they were taking what she said under CAT as credible and then making a determination based on that credibility. Well, based on the Board's decision here, Your Honour, they did look at the totality of the circumstances and the record, and they did not find any indication that she would be tortured. But under the totality of the circumstances, as they examined it, it was an incredible petitioner. Your Honour, the immigration judge made an alternate merits decision on this case and therefore looked at it from the lens of a non-adverse credibility claim. And that's the same thing the Board did when the Board adopted and affirmed the decision. Thank you for your answer. I have one more question. Yes, Your Honour. Was it from the State Department, the report that concerned the other documents? Yes, Your Honour. So do you ask your opponent the circumstances surrounding that? Do you have a different view from what he said? Basically, the immigration judge did not accept the documents into the record, but accorded it very limited weight because of the unavailability of the author for cross-examination and the fact that there was some, you know, discrepant information which was not cleared on the record. You mean in the document itself? Well, the attestation of the State Department, it appeared that there were some issues that could not be really cleared up. And because of that, the judge did not even use the State Department's report in making a decision in this case. Okay. The reason I'm asking about that is that obviously if there were evidence that she falsified two other documents and that somehow were borne out on the record, I think that might change the case. So would the agency need to be given an opportunity to sort of sort through that? Or is that report just off the table now? That is off the table totally, Your Honour. The judge didn't even consider the alleged information from the State Department. The judge looked at the totality of the circumstances and the documents to arrive at a decision. Okay. Got it. All right. Thank you very much. Do you have an extra copy of your letter? I have a copy here that I could give you, the 28-J letter, Your Honour. Could you give it to Stephanie? And counsel for Petitioner, you're welcome to address us. We'll put two minutes on the clock for you. You know about the 28-J letter, right? I do. I have received it, yes. I'm trying to make sure that we're not looking at something you haven't seen. No, thank you. I got a copy on Monday. I know about it, so I just want to make sure. Thank you. So just briefly, Your Honour, going back to your question, because I think you also have a big concern about this anti-fraud finding. But the BIA's decision also specifically states that they are giving zero weight to the findings in the anti-fraud report, even though they find that it was properly admitted. But it's being given zero weight, which means that none of the findings that are being taken into consideration in the credibility determination. And because the judge, separate and apart from this anti-fraud report, did not make any determination about these documents, there's zero evidence in the record that these documents are anything other than genuine and authentic. Well, but there's a report that says they're not. And I grant you that the agency and the I.J. refuse to give it any weight. But I thought that was because they said you didn't have an adequate opportunity to... No, that's not the only reason, Your Honour. That was one of the reasons. But the judge, if that was the reason, he would not have even admitted the report. But he said, despite the fact that you have an opportunity to cross-examine the author of the report, I'm going to admit it. But he didn't give it any weight because of the glaring inaccuracies in the report. For example, Your Honour, the report had a big concern about the address of the court, saying that, no, this court is not on this street, it's on another street. But I submitted documentary evidence showing that, no, in fact, this court is on this street. And the judge himself independently looked into that and confirmed it. So the judge agreed with, and we had lengthy argument, as reflected in the record, as to why the information in this report is conclusory. There's no basis as to why the author thought that, for example, the courts use a different font. There was no basis for it. It was just conclusory. There was no indication that the author, for example, said that the report uses a Western dialect. Whereas we submitted a declaration from an interpreter saying that, no, this is actually good Armenian and it uses the Eastern dialect. So based on all these inaccuracies in the report, the judge found because the report is not reliable, he did not give it any weight. So it wasn't just because I wasn't allowed to cross-examine the author. And I think that's very important to point out. And then moving on very quickly, I don't want to be a dead horse on the credibility finding, but, again, I would implore you to, again, consider the fact that the judge said that, the petitioner said that none of the 10 declarants saw the bruise. Whereas, in reality, two of the female declarants did see the bruises. So, again, this was somewhat of a mischaracterization by the judge. Moving on to the nexus, Your Honor, this Court has clearly held, for example, in Ochave, I'm sorry, for example, in Novos, that there is an inference of an imputed political opinion when the petitioner is a family member of someone known to have a particular political opinion. Now, the judge interjects this concocted personal beef that the police may have with the petitioner, but there's zero evidence of any personal beef between the petitioner and the petitioner's husband and the police. But to be fair, and you've gone over, and I'm a little worried about that, but to be fair, there is no evidence in this record that any other person in his family was at all involved by either the police or anyone else in trying, because of whatever it was he was doing. Okay. Your Honor, that may or may not go to the PSG ground, but as far as the imputed political opinion, the case in Ochave said that there's basically three factors I need to consider, that the persecutor knew who the victim was, the persecutor knew the family member, and also that there's an indication that the persecutor chose the victim because of the family member's activities. Now, the case that the government cited to Garcia-Millan is completely distinguishable from this case. We didn't have a temporal connection. Here, within one week of the petitioner's husband fleeing the country because of his political activities, the police start targeting her. They ask about her every single time. This country reports, as well as this course holding in Baghdad, that confirmed that the Armenian government routinely targets family members of political dissidents. The police here, every time it came over, it was the same police who was targeting the petitioner's husband's political group. The same police came looking for the wife, saying that, you tell us where your wife is, or else your life will be hell. They brutally raped her on two occasions. And the only logical inference that can be drawn from that, Your Honors, is that this was all done because of her husband's political activities.
judges: N.R. Smith, Watford, Hellerstein